```
                    UNITED STATES DISTRICT COURT
                            FOR THE
                       DISTRICT OF VERMONT

MICHAEL MONTGOMERY, MEAGAN MARIA      :
CLAPP, and AARON JOY MONTGOMERY,      :
     Plaintiffs,                      :
                                      :
          v.                          :    Case No. 2:05-cv-251
                                      :
NLR COMPANY; CHESHIRE HANDLING        :
CORPORATION, d/b/a RIVERSIDE          :
RELOAD CENTER; GREEN MOUNTAIN         :
RAILROAD CORPORATION, d/b/a GREEN     :
MOUNTAIN INTERMODAL; VERMONT          :
RAILWAY TRUCKING, INC.; VERMONT       :
RAILWAY, INC., d/b/a VERMONT RAIL     :
SYSTEMS; RAILWAY SERVICES, INC.;      :
and NEWLEASACO, INC.                  :
                                      :
     Defendants.                      :
```

MEMORANDUM OPINION and ORDER

Plaintiffs Michael Montgomery, his step-daughter and son, bring suit under the Federal Employers' Liability Act ("FELA"), 45 U.S.C.A. § 51-60 (West 1986 & Supp. 2005), to recover for injuries Montgomery sustained when he was struck by a forklift at work.  All Defendants have moved to dismiss the action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. Alternatively Defendants have moved for summary judgment, asserting an absence of dispute of material fact and entitlement to judgment as a matter of law.  See Fed. R. Civ. P. 56.  For the reasons that follow, the motion to dismiss (Doc. 3) is granted in part and denied in part.  The motion for summary judgment (Doc. 4) is denied in part and denied in part as moot.

**I.   Motion to Dismiss**

In considering whether to dismiss for failure to state a claim upon which relief can be granted, a court considers the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference, and matters appropriate for judicial notice.  *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  A court may "take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).  A complaint will not be dismissed for failure to state a claim "'unless it appears beyond doubt that [a] plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  All facts alleged in the complaint are accepted as true.  *Id.*

The following facts are either undisputed or taken as true for purposes of the motion to dismiss.  Montgomery, a truck driver, was an employee of NLR Company on August 20, 2002, when he was struck by a company forklift operated by a co-employee.  He sustained massive pelvic and perineal injuries, and began receiving workers' compensation benefits for his injuries in

2002.  Defendants are the alleged owners, operators and/or controllers of a railroad involved in interstate commerce.

Plaintiffs sued NLR Company, d/b/a Riverside Reload, and Michael Whitcomb, the operator of the forklift, in the Windsor County Superior Court on May 15, 2003, asserting claims for negligence, negligent and careless operation, negligent entrustment, respondeat superior, violation of statutory duty, willful and wanton acts, and loss of consortium.  On NLR Company's motion for judgment on the pleadings, the Superior Court entered judgment in its favor, based on the exclusivity provision of Vermont's workers' compensation statute, Vt. Stat. Ann. tit. 21, § 622 (2003).  Plaintiffs' untimely appeal of this decision was dismissed on February 12, 2004.

Thereafter, Plaintiffs moved in Windsor Superior Court to amend their complaint, seeking to join additional party defendants Cheshire Handling, d/b/a Riverside Reload Center, Green Mountain Railroad d/b/a Green Mountain Intermodal, Vermont Railway Trucking, Inc., and Vermont Railway, Inc., d/b/a Vermont Rail Systems.  The motion to amend was denied.

Plaintiffs then brought suit in the Windham County Superior Court against the same entities:  Cheshire Handling, d/b/a Riverside Reload Center, Green Mountain Railroad, d/b/a Green Mountain Intermodal, Vermont Railway Trucking, Inc., and Vermont Railway, Inc., d/b/a Vermont Rail Systems.  These defendants also

Case 2:05-cv-00251-wks   Document 13   Filed 05/23/06   Page 4 of 16

sought dismissal based on the workers' compensation exclusivity provision; their motion for summary judgment was granted. Judgment on behalf of the defendants was entered on September 6, 2005. That decision is currently on appeal to the Vermont Supreme Court.[1]

On September 15, 2005, Plaintiffs filed their complaint in this Court, asserting claims for negligence (Count I), negligent entrustment (Count II), respondeat superior (Count III), breach of a statutory duty (Count IV), premises liability (Count V), piercing the corporate veil (Count VI), willful, wanton acts (Count VII) and loss of consortium (Count VIII). The complaint alleges FELA as the basis for the Court's jurisdiction over the negligence and breach of duty claims, and seeks the exercise of pendent jurisdiction over state law claims. The state law claims are identical to the state law claims that were dismissed by state courts against five of the defendants in this case.

The Defendants contend that the state law claims against them are barred by the doctrines of res judicata and defensive collateral estoppel.[2]

---

[1] In neither state court action did Plaintiffs allege that Defendants were involved in interstate commerce.

[2] Defendants also contend that any FELA claim is barred because Montgomery elected his remedy through seeking benefits from Vermont's workers' compensation statutes, and because the statute of limitations for bringing a FELA action has expired. These issues require examination of facts not presented in the complaint, and are addressed in the Motion for Summary Judgment

Res judicata, or claim preclusion, "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979). Section 1738 of Title 28, United States Code, "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982). A federal court must "refer to the preclusion law of the State in which judgment was rendered" to determine the preclusive effect of the judgment. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).

Under Vermont law, "a final judgment in previous litigation bars subsequent litigation if the parties, subject matter, and cause(s) of action in both matters are the same or substantially identical." *Faulkner v. Caledonia County Fair Ass'n*, 178 Vt. 51, 54, 869 A.2d 103, 107 (Vt. 2004); *accord Bidgood v. Town of Cavendish*, 878 A.2d 290, 291-92 (Vt. 2005). "The doctrine applies both to claims that were or should have been litigated in the prior proceeding." *Faulkner*, 178 Vt. at 54, 869 A.2d at 107. Causes of action are the same if the same evidence will support the claims. *Id.*, 178 Vt. at 56, 869 A.2d at 108. A judgment is

---

section, below.

final for claim preclusion purposes even if an appeal is pending. *R.E. Bean Const. Co. v. Middlebury Assocs.*, 139 Vt. 200, 206, 428 A.2d 306, 309-310 (1980).

Plaintiffs' state law claims against NLR Company, Cheshire Handling Corporation, Green Mountain Railroad Corporation, Vermont Railway Trucking and Vermont Railway, Inc. are identical to the claims raised and adjudicated in the Windsor and Windham County Superior Courts, and are barred by the doctrine of claim preclusion.

Plaintiffs bring the same state law claims against new Defendants Railway Services, Inc. and Newleasaco, Inc. They are described in the complaint together with the other defendants as "corporations incorporated in the State of Vermont with a principal place of business in Burlington, Vermont with operations located in the Town of Rockingham," who "owned and/or operated and/or controlled a railroad which was involved in interstate commerce which passed through the Town of Rockingham, Vermont." Complaint ¶ 4 (Doc. 1). The complaint further alleges that the seven defendants "are all one and the same corporate entity." *Id.* ¶ 44. If the allegations of the complaint are taken as true, then Railway Services, Inc. and Newleasaco, Inc. benefit from the preclusive effects of the state court judgments to the same extent as the state court defendants. *See Faulkner*, 178 Vt at 54, 869 A.2d at 107 (where second suit added defendant

in privity with defendant in first suit, claim preclusion barred claim against both defendants).  Accordingly, Plaintiffs' state law claims against additional defendants Railway Services, Inc. and Newleasaco, Inc. are also barred by the doctrine of claim preclusion.[3]

Defendants' motion to dismiss is therefore granted in part and denied in part; Plaintiffs' state law claims are dismissed. Defendants' arguments attacking Plaintiffs' FELA claim are addressed below.

**II.  Motion for Summary Judgment**

Summary judgment will be granted "if there is 'no genuine issue [of] material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Higgins v. Metro-North R. Co.*, 318 F.3d 422, 425 (2d Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  A court "construe[s] the evidence in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor."  *Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 117 (2d Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Defendants argue that Plaintiffs' FELA claims are barred because Montgomery sought and received benefits under Vermont's

---

[3] Given that the state law claims against Railway Services, Inc. and Newleasaco, Inc. are barred by claim preclusion, it is unnecessary to determine whether they are barred by collateral estoppel, or issue preclusion.

workers' compensation law, under a theory of waiver or estoppel.

FELA, "a nationwide uniform system of liberal remedial rules, displaces any state law trenching on the province of the Act." *S. Buffalo Ry. Co. v. Ahern*, 344 U.S. 367, 371 (1953); *see also Rogers v. Consol. Rail Corp.*, 948 F.2d 858, 869 (2d Cir. 1991) ("well-settled that Congress explicitly directed that FELA wholly preempt state-law remedies for railway employees injured in the course of employment when any part of that employment furthers interstate commerce"). No State may compel injured employees to elect between their federal remedies and participation in a state workers' compensation plan. *S. Buffalo Ry.*, 344 U.S. at 372; *accord Erie R. Co. v. Winfield*, 244 U.S. 170, 174 (1917). That does not mean, however, that a claimant may not waive his FELA claims. *See Mooney v. City of New York*, 219 F.3d 123, 129 (2d Cir. 2000) (discussing waiver of Jones Act claim by receipt of workers' compensation benefits); *Reyes v. Delta Dallas Alpha Corp.*, 199 F.3d 626, 629-30 (2d Cir. 1999) (same); *see also S. Buffalo Ry.*, 344 U.S. at 372 (parties may compromise FELA claim without transgressing policy of Act).

In *Mooney*, a panel of the Second Circuit Court of Appeals discussed the standard for waiver of maritime claims under the Jones Act[4] "as a result of an adjudication by a state

---

[4] FELA was incorporated into the Jones Act, *see Am. Export Lines, Inc. v. Alvez*, 446 U.S. 274, 283 (1980), and courts have relied on case law interpreting the same provisions of either

8

compensation board." *Mooney*, 219 F.3d at 128. It held that

> when the circumstances make it clear that a claimant has elected to receive compensation benefits in lieu of all of the claims he could pursue . . . a 'formal award' and acceptance of such compensation benefits can evidence a waiver of a Jones Act claim. An award of compensation substantially exceeding interim benefits during a period of unemployment might indicate a waiver, especially if the claimant received such benefits for an extended period of time beyond unemployment without indicating an intention to bring a Jones Act claim.

*Id.* at 129. Thus, the mere receipt of workers' compensation benefits does not preclude a FELA claim. *Cf. Sw. Marine, Inc. v. Gizoni*, 502 U.S. 81, 92 (1991) ("'universally accepted' that an employee who receives voluntary payments under the [Longshore and Harbor Workers' Compensation Act] without a formal award is not barred from subsequently seeking relief under the Jones Act").

    The undisputed facts in this case show only that Montgomery has been receiving workers' compensation benefits since shortly after his accident, and that his attorney entered a notice of appearance on behalf of Montgomery before the Vermont Department of Labor and Industry on September 16, 2002. Defendants argue that since Montgomery has continued to accept workers' compensation benefits for more than three years without indicating an intention to pursue a FELA claim, they are entitled

---

Act. *See, e.g., Reyes*, 199 F.3d at 629 (a Jones Act case, holding that a FELA case, *Heagney v. Brooklyn Eastern District Terminal*, 190 F.2d 976 (2d Cir. 1951), is superseded authority on the issue of waiver.

to summary judgment on the issue of waiver.

The standard set forth in *Mooney* requires an examination of the circumstances to determine whether a claimant has elected to receive workers' compensation in lieu of bringing a FELA action. The Court has been provided with no information about the circumstances surrounding Montgomery's receipt of workers' compensation benefits: for example, whether there was a contested claim; whether it resulted in an adjudication; whether there has been a formal or final award, or any lump sum payments of permanent disability benefits; whether there was any determination concerning involvement in interstate commerce; whether any decision of the commissioner was appealed; whether Montgomery or his attorney ever "evince[d] an intention to waive redress" under FELA. *Reyes*, 199 F.3d at 629. Viewing the available evidence in the light most favorable to Montgomery, the Court cannot imply a waiver of Montgomery's right to pursue a FELA claim from the scanty information provided.

Likewise, Defendants have not demonstrated they are entitled to summary judgment on the grounds that Plaintiffs are estopped from pursuing a FELA claim, either under the doctrine of collateral estoppel or equitable estoppel.

Under Vermont law,[5] the doctrine of collateral estoppel, or

---

[5] This Court applies Vermont law concerning issue preclusion, pursuant to 17 U.S.C. § 1738. *Marrese*, 470 U.S. at 380.

issue preclusion, "bars the subsequent relitigation of an issue which was actually litigated and decided in a prior case between the same parties resulting in a final judgment on the merits, where that issue was necessary to the resolution of the action." *Am. Trucking Ass'ns, Inc. v. Conway*, 152 Vt. 363, 369, 566 A.2d 1323, 1327 (1989). Issue preclusion is found when

> (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

*Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990); *accord Bull v. Pinkham Eng'g Assocs. Inc.*, 170 Vt. 450, 461, 752 A.2d. 26, 35 (2000). Issue preclusion may be applicable to administrative proceedings "when an agency is acting in a judicial capacity." *Sheehan v. Dep't of Employment & Training*, 169 Vt. 304, 308, 733 A.2d 88, 91 (1999). Defendants have not specified any issue, in any tribunal, necessary to resolution of an earlier case, that has been fully and fairly litigated and resolved so that it may not be re-litigated in Plaintiffs' FELA action.

Under the equitable doctrine of judicial estoppel, a party may be estopped from asserting a position inconsistent with a position that it maintained and a tribunal adopted in an earlier legal proceeding. *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138,

11

147 (2d Cir. 2005). Among the factors that affect whether to apply equitable estoppel are "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)). Quite apart from the question whether judicial estoppel should be applied at this summary judgment stage of litigation, Defendants have supplied no evidence that Montgomery took a position before another tribunal that is inconsistent with his position here, that any tribunal adopted his position, or that he would derive an unfair advantage from having done so.

Finally, Defendants argue that the expiration of FELA's statute of limitations bars this action. Under FELA, "[n]o action shall be maintained . . . unless commenced within three years from the day the cause of action accrued." 45 U.S.C.A. § 56. Montgomery was injured on August 20, 2002. If his cause of action accrued on August 20, 2002, then the statutory deadline for commencing his FELA cause of action was August 19, 2005. This lawsuit was filed on September 15, 2005, nearly one month after the deadline.

Plaintiffs argue that the statute of limitations must be tolled to account for a period of at least thirty-one days immediately after his accident when he was "incapacitated." Pls.' Opp'n Mot. at 7, 9 (Doc. 7). In their complaint,

12

Plaintiffs allege that as a result of the forklift accident "Montgomery was rendered unconscious for approximately two months after the date of the initial injury. . . . Medical reports dated September 20, 2002 . . . indicate that he was 'awake, oriented to self, not place or time.'. . . By the middle of October . . . Montgomery began to become cognizant and aware of his medical condition."  Compl. ¶¶ 6, 7, 10.

In support of their motion for summary judgment, Defendants proffered an affidavit from their house counsel who reported that on August 28, 2002 he received a telephone call from Montgomery's attorney.  According to the affidavit, Montgomery's attorney "indicated" that Montgomery had "indicated" to him that he was concerned about receiving his paychecks and workers' compensation benefits, and at no time suggested that Montgomery was in any way incapacitated.  Benson Aff. at 2 (Doc. 4).  In opposition, Plaintiffs produced an affidavit from their attorney, stating that the conversation took place after a meeting with Montgomery's fiancé, in which she discussed Montgomery's condition and the family finances.  Bixby Aff. at 1 (Doc. 8).

According to the medical records submitted in opposition to the Defendants' motion for summary judgment, Montgomery's neurological status on the day of his injury before he was airlifted to Dartmouth Hitchcock Medical Center for emergency surgery was "conscious, alert and oriented."  Pls.' Opp'n Mot.

13

Ex. 21. Following emergency surgery, he was sedated and intubated and on a ventilator. *Id.* Ex. 22-34. By September 1, his sedation had been lightened and he was being weaned from the ventilator, although he was not able to speak or follow commands. *Id.* Ex. 34-37. The medical records show that Montgomery was awake and alert on September 5 and responding appropriately to commands, *id.* Ex. 38, but beginning September 7 his mental status changed. He was awake but "appear[ed] confused," *id.* Ex. 40-41; "respond[ed] slowly to commands," *id.* Ex. 42; was "increasingly confused and agitated," and "somnolent." *Id.* On September 10, he was "unable to stay awake for conversation," and was "sedated and unresponsive," *id.* Ex. 43; on the following day he was "more lucid," but "confused." *Id.* Ex. 44. On September 12 and 13 he was not alert enough to participate in an occupational therapy evaluation. *Id.* Ex. 46. Over the next week his condition fluctuated between periods of alertness and periods of agitation and disorientation. *Id.* Ex. 47-48; 50-54. By September 21 he was "awake, much more oriented," *id.* Ex. 54, and his neurological status continued to improve from then on.

If Montgomery's impaired neurological status from the date of his injury until at least September 15 suffices to toll the statute of limitations, then his action will have been timely filed. "[T]he FELA limitation period is not totally inflexible, but . . . may be extended beyond three years," if, under the

14

circumstances the congressional purpose would be effectuated. *Burnett v. N.Y. Cent. R. Co.*, 380 U.S. 424, 427 (1965). Tolling in general "may be appropriate where particular external forces beyond a claimant's power to control disable [a] plaintiff from suing." *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1074 (2d Cir. 1993). Whether mental incompetence may toll the FELA statute of limitations is an open question in this as well as other circuits. *E.g., Atkins v. Union Pac. R. Co.*, 685 F.2d 1146, 1148 (9th Cir. 1982) (unnecessary to reach issue); *Bacon v. Metro N. Commuter R.R. Corp.*, 592 F. Supp. 14, 15 (S.D.N.Y. 1984) (severe mental disability may prevent plaintiff from asserting rights).

Plaintiffs have produced some evidence that during the period between Montgomery's injury and his counsel's notice of appearance on his behalf before the Vermont Department of Labor and Industry his medical condition rendered him incapable of pursuing a remedy for his injuries, and that he was not yet represented by counsel. Under the circumstances, the Court is unable to conclude as a matter of law that summary judgment is warranted on the ground that the statute of limitations has expired. *Compare Lopez v. Citibank, N.A.*, 808 F.2d 905, 907 (1st Cir. 1987) (finding no grounds for tolling limitations period on mental disability grounds where plaintiff was represented by counsel).

In order to determine whether this case warrants equitable tolling, specific evidence, perhaps in the form of expert testimony from his physicians, will be required to "determine to what extent, if any, [his] condition did in fact inhibit his understanding or otherwise impair his ability to comply, such that equitable tolling would be in order."  *Brown v. Parkchester S. Condominiums*, 287 F.3d 58, 60-61 (2d Cir. 2002).  Montgomery also should be prepared to produce evidence concerning when and how he secured representation by counsel.

The motion for summary judgment is denied in part and denied in part as moot.

Dated at Burlington, in the District of Vermont, this 23rd day of May, 2006.

<u>/s/ William K. Sessions III</u>
William K. Sessions III
Chief Judge
U.S. District Court