```
                   UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF VERMONT
                                        :
MICHAEL MONTGOMERY, MEAGAN MARIA        :
CLAPP, and AARON JOY MONTGOMERY,        :
     Plaintiffs,                        :
                                        :
          v.                            :    Case No. 2:05-cv-251
                                        :
NLR COMPANY; CHESHIRE HANDLING          :
CORPORATION, d/b/a RIVERSIDE            :
RELOAD CENTER; GREEN MOUNTAIN           :
RAILROAD CORPORATION, d/b/a GREEN       :
MOUNTAIN INTERMODAL; VERMONT            :
RAILWAY TRUCKING, INC.; VERMONT         :
RAILWAY, INC., d/b/a VERMONT RAIL       :
SYSTEMS; RAILWAY SERVICES, INC.;        :
and NEWLEASACO, INC.                    :
                                        :
     Defendants.                        :
```

MEMORANDUM and ORDER

On January 9, 2007, the plaintiffs filed Plaintiffs' Revised Motion for Partial Summary Judgment Regarding Statute of Limitations (Doc. 69).  On February 8, 2007, the defendants filed Defendants' Motion for Summary Judgment (Doc. 87).  On March 29, 2007, the defendants filed a Motion to Strike (Doc. 105).  On May 7, 2007, defendants filed Defendants' Motion for Summary Judgment and Motion for Contempt (Doc. 121).  For the reasons stated below, these motions are DENIED.

**LEGAL STANDARD**

Summary judgment will be granted "if there is 'no genuine issue [of] material fact and. . .the moving party is entitled to a judgment as a matter of law.'" Higgins v. Metro-North R. Co., 318 F.3d 422, 425 (2d. Cir. 2003)(quoting Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986)).  A court "construe[s] the

evidence in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor." Ocean Ships, Inc. V. Stiles, 315 F.3d 111, 117 (2d Cir. 2002)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

## DISCUSSION

**I.   STATUTE OF LIMITATIONS**

The Federal Employer's Liability Act (FELA) provides protection for employees of common carriers by railroad, in interstate or foreign commerce, for injuries caused by the negligence of the employer. 45 U.S.C.A. § 51.  Under FELA, "[n]o action shall be maintained. . . unless commenced within three years from the day the cause of action accrued." 45 U.S.C.A. § 56.  In this case, the plaintiff's injury occurred on August 20, 2002.  This action was filed on September 15, 2005, nearly one month after the statute of limitations expired.

In their request for summary judgment, plaintiffs argue that an equitable tolling of the statute of limitations period would be appropriate in this case because claimant Michael Montgomery was incapacitated from August 20, 2002 through September 20, 2002.  Defendants, on the other hand, argue, in their request for summary judgment, that the statute of limitations period for a FELA claim cannot be tolled for incapacity.  Alternatively, they argue that tolling the statute of limitations is not appropriate in this case.

**A.  The statute of limitations for a FELA claim may be tolled due to plaintiff's incapacity**.

The issue of equitable tolling of FELA claims has been addressed by the United States Supreme Court in <u>Burnett v. New York Cent. R.R. Co.</u>, 380 U.S. 424 (1965).  In <u>Burnett</u>, the plaintiff had timely filed suit in a state court having jurisdiction but the suit was dismissed for improper venue.  <u>Id.</u> at 425.  Eight days after this dismissal, the plaintiff brought an action in federal court.  <u>Id.</u>  However, the court dismissed this action because it was filed outside of the three year limitation period.  <u>Id.</u>  Upon reviewing this dismissal, the Supreme Court indicated that "the FELA limitation period is not totally inflexible, but, under appropriate circumstances, it may be extended beyond three years."  <u>Id.</u> at 427.  The Court went on to hold that these circumstances were appropriate for the equitable tolling of the statute of limitations.  <u>Id.</u>

Although the Court in <u>Burnett</u> did not determine whether a plaintiffs' incapacity would qualify as an appropriate circumstance for equitable tolling, it provided that, "the basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances."  <u>Id.</u>  The general purpose of the statute of limitations is to provide fairness to the defendant and to prevent plaintiffs from sleeping on their rights.  <u>Id.</u> at 428.  However, in situations where a plaintiff has not actually slept on his rights, but instead has

been prevented from asserting them, considerations of justice lead to the conclusion that equitable tolling of the statute of limitations is appropriate to effectuate congressional purpose. Id. at 428-29.

In the case at bar, plaintiffs argue that incompetence is an appropriate circumstance for equitable tolling of the statute of limitations. In support of this claim, they point to Brooks v. Southern Pac. Co., 466 P.2d 736 (Ariz. 1970). In Brooks, a man was injured when he slipped and fell from a train on which he was working. Three years and six months later, he filed a FELA claim alleging physical and mental injuries. Although the suit was initiated after the expiration of the FELA limitation period, the Supreme Court of Arizona held that "the FELA statute of limitations may be tolled by reason of plaintiff's incompetence." Id. at 739. In reaching this holding, the court concluded that a number of previous cases, which adopted a strict interpretation of the FELA statute of limitations, were no longer good law in the wake of the Burnett decision. Plaintiffs argue that this court should follow the reasoning in Brooks and allow the statute of limitation to be tolled in cases of incapacity.

The defendants respond that this Court is bound by certain language in Osbourne v. United States, a pre-Burnett case, which says that the statute of limitations for FELA claims "will not be extended, as it would be in the case of an ordinary statute of

limitations, by a claimant's disability to sue because of infancy or insanity." Osbourne v. United States, 164 F.2d 767, 768 (2d. Cir. 1947). The defendants, in their motions, assert that this statement was a holding of the case. However, in Osbourne, the plaintiff was injured during wartime due to the negligence of the defendant but was prevented from filing suit within the limitation period because he was being held captive by the enemy. Id. at 767-68. The court reasoned that these circumstances were so extraordinary that the limitation period could not be enforced. Id. at 768-69. Thus, it held that the statute of limitations should be tolled while the plaintiff was in captivity. Id. at 769. In light of this decision, the statement that a FELA statute of limitations will not be extended for infancy or insanity is dictum. Furthermore, given the Supreme Court's clear statement in Burnett that equitable tolling is appropriate in certain circumstances, the Osbourne dictum is no longer good law.

The defendants further argue that the holding of Brooks was a misapplication of the Burnett decision. More specifically, they point to the emphasis that the Burnett Court placed upon the importance of maintaining a uniform application of FELA nationwide. The defendants assert that if courts become willing to toll the statute of limitations due to insanity or incapacity, plaintiffs will have varying amounts of time to file suit

depending upon the length of their incapacity.  According to the defendants, this result would be inconsistent with the Burnett decision.

This argument is unpersuasive.  While the Burnett Court did discuss national uniformity, the true emphasis of the holding was that the FELA limitation provision may be extended under the appropriate circumstances.  Thus, the key question becomes whether a plaintiffs' incapacity is an appropriate circumstance for equitable tolling.  Brooks, unlike Osbourne, occurred after the Burnett decision and relied upon Burnett in concluding that incapacity is an appropriate circumstance.  This Court agrees with the Brooks court's reasoning that it has the authority to equitably toll the statute of limitations for cases of incapacity.

Finally, the defendants argue that courts have used equitable tolling of the statute of limitations for FELA claims only sparingly.  They urge the court to be cautious before extending such equitable tolling and contend that it is an issue which is more appropriately dealt with by the legislature.  Accordingly, they argue that an examination of legislative intent is relevant to this inquiry.  While there have been several revisions to the FELA statute of limitations, Congress has never chosen to include a provision which would toll the statute for

incapacity.  Thus, the defendants argue, Congress did not intend to allow equitable tolling for incapacity.

This argument is not persuasive.  Although the Court agrees that equitable tolling is to be used sparingly, in certain circumstances equitable tolling is necessary to promote the interests of justice.  Additionally, the <u>Burnett</u> decision occurred in 1965 and the <u>Brooks</u> decision followed in 1970.  Since that time, Congress has failed to respond with any indication that they disagreed with the use of equitable tolling in the case of incapacity.  Thus, it is not clear that their failure to allow for equitable tolling in 1939 provides any meaningful insight into the intent of Congress.  Therefore, this Court has the authority to toll the statute of limitations on a FELA claim in the case of a plaintiffs' incapacity.

**B.  Whether this case presents the appropriate circumstances for equitable tolling of the FELA statute of limitations is a factual issue to be decided at trial.**

**1.  Montgomery's cognitive state between August 20, 2002 and September 20, 2002 is a disputed issue of material fact.**

Montgomery argues that he was in a medically induced coma from August 20, 2002 until September 20, 2002.  In their Revised Motion for Partial Summary Judgment Regarding Statute of Limitations, plaintiffs present a proposed timeline which indicates Montgomery's cognitive state throughout this period.

According to this timeline, there were several points when Montgomery was able to respond to questions and commands. However, plaintiffs argue that throughout this period, Montgomery remained confused and demonstrated cognitive defects. Furthermore, they argue, in the opinion of Dr. Bagley, Montgomery was unable to handle his affairs until September 27, 2002.

The defendants, on the other hand, assert that Montgomery was not rendered incompetent during this period.  They concede that the medical records provided by the plaintiff demonstrate that Montgomery was hospitalized and underwent several surgical and medical proceedings during the period between August 20, 2002 and September 20, 2002.  However, they argue that he was awake and alert at the time of his initial transport to the hospital. Additionally, they point to the medical records from Lefevre Ambulance Service and Dartmouth Hitchcock Medical Center which indicate that there were times between August 20, 2002 and September 20, 2002 when Montgomery was awake, alert, and able to engage in conversation.  Thus, they argue that Montgomery was not in a coma, and was therefore not incapacitated.

As discussed above, this Court may equitably toll the limitations period for a FELA claim in the case of incompetence or incapacity.  However, the question of whether Montgomery was actually incapacitated appears to be a factual one.  While it is clear that he was sedated for the majority of the month

8

immediately following his accident, it is not clear what cognitive capacity Montgomery achieved during this period. Summary judgment on the issue is therefore inappropriate.

> **2. The scope of Attorney Bixby's representation between August 20, 2002 and September 20, 2002 is a disputed issue of material fact.**

Even if the Court were to conclude that Montgomery was incapacitated as a matter of law, the defendants argue that equitable tolling would still not be appropriate because Montgomery was represented by counsel on or before August 28, 2002. As evidence of this, the defendants point to the Retainer Agreement between William M. McCarty, Esq. and Rhodella M. Clapp on behalf of Montgomery. This agreement was dated on August 28, 2002, and was intended to serve as a confirmation of McCarty Law Offices' representation of Montgomery in his Workers Compensation claim. Following that agreement, Attorney Bixby filed his notice of appearance with the Vermont Department of Labor on September 16, 2002. Since then, Attorney Bixby has represented Montgomery in order to secure workers compensation benefits. He also has pursued various state law claims, beginning on May 15, 2003.

The Second Circuit Court of Appeals addressed the issue of tolling for plaintiffs who are represented by counsel. See Keyse v. California Texas Oil Corp., 590 F.2d 45 (2d. Cir. 1978) (equitable tolling is not appropriate in a Title VII suit where the plaintiff was represented by counsel); Smith v. American

President Lines, Ltd., 571 F.2d 102 (2d. Cir. 1978) (equitable tolling is not appropriate in a Title VII suit where the plaintiff was represented by counsel).  These cases, however, did not involve plaintiffs who had been incapacitated.  Instead, they involve plaintiffs who were unaware of their rights despite being represented by counsel.  Therefore, these decisions do not bind the Court in this case.

In support of their argument that the FELA statute of limitations should not be equitably tolled for incapacity where the incapacitated plaintiff is represented by counsel, the defendants point to Lopez v. Citibank, N.A., 808 F.2d 905 (1st Cir. 1987).  In Lopez, the court stated that "assuming for the sake of argument that mental illness might sometimes toll the statute of limitations, we find that it cannot do so where a plaintiff has presented no strong reason why, despite the assistance of counsel, he was unable to bring suit."  Id. at 907. In reaching this conclusion, the Court reasoned that where a plaintiff is represented by counsel and other avenues of relief are being pursued, it is reasonable to assume that counsel knew that the plaintiff wished to pursue all remedies and that counsel knew or should have known of the relevant limitation period.  Id. Thus, the plaintiff and his counsel were not deprived of the opportunity to file suit in a timely fashion and equitable tolling was not appropriate.  Id.

10

In the case at bar, the retainer agreement signed on August 28, 2002, demonstrates that Attorney Bixby was originally hired to pursue only workers compensation claims. The agreement was not signed by Montgomery, who was in medical care until February 21, 2003 and unavailable for an attorney client interview until May 20, 2003. Moreover, Attorney Bixby first entered his notice of appearance for Montgomery on September 16, 2002, less than three years prior to the filing of this litigation. Plaintiffs contend that Attorney Bixby was retained only to ensure that accumulating bills were taken care of. Unlike Lopez, it is possible that Attorney Bixby reasonably believed that Montgomery was solely interested in pursuing his workers compensation claims. Therefore, the scope of Attorney Bixby's representation during the relevant time period constitutes a factual determination to be decided at trial and summary judgment is inappropriate.

      **3.**    **The issue is not rendered moot by Attorney Bixby's failure to respond to Requests to Admit in a timely fashion.**

On March 1, 2007, the Court issued an order requiring plaintiffs to respond to Requests to Admit Nos. 1-22, 29-71, 73-77, 131, 135-149. The plaintiffs, however, failed to comply with this order. As a result, the defendants argue that pursuant to Rule 36 of the Federal Rules of Civil Procedure, these Requests to Admit are deemed admitted and are thus conclusively

established.  Fed. R. Civ. P. Rule 36.  Therefore, they argue, there is no longer any genuine issue of material fact and summary judgment should be granted in their favor.  Additionally, the defendants request that the Court should hold the plaintiffs in contempt for their failure to comply.  Plaintiffs respond that their failure to comply resulted from a clerical error and request permission to withdraw these admissions.  Defendants oppose this request, and in turn allege bad faith on the part of the plaintiffs in light of the history of this case.

According to the Federal Rules of Civil Procedure, "the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits."  Fed. R. Civ. P. Rule 36(b).  In this case, the result of these admissions would be summary judgment, and the merits of the claim would not be litigated.  The defendant presents no evidence of bad faith aside from the history of discovery in this case, which has been marked by contentious behavior from both parties.  Thus, the Court permits withdrawal of the admissions, and the Motion for Summary Judgment and Motion for Contempt (Doc. 121) is denied.

**II.   WAIVER AND ESTOPPEL**

In addition to their statute of limitations argument, the defendants assert that remedies provided by FELA and by workers compensation are mutually exclusive.  Thus, they argue that because Montgomery has received more than one million dollars in workers compensation benefits, he has waived his right to bring a FELA claim and should be estopped from doing so.  However, the relevant case law does not support this argument.  Defendants rely primarily upon Lawrence v. Rutland Railroad, 28 A.2d 488 (Vt. 1942).  This case, however, represents an appeal from a decision of the Commissioner of Industrial Relations.  Id. at 489-90.  The court affirmed the decision of the Commissioner and indicated that where a plaintiff is not engaged in interstate commerce, workers compensation applies and FELA does not.  Id. at 490.  However, Lawrence does not stand for the proposition that a plaintiff is precluded from bringing a FELA claim where he has previously accepted workers compensation benefits.

In fact, a Second Circuit Court of Appeals case has repeatedly indicated that a plaintiff does not waive his right to a Jones Act claim by accepting payments under workers compensation unless that payment represents a final award.  See Reyes v. Delta Dallas Alpha Corp., 199 F.3d 626 (2d. Cir. 1999); Mooney v. City of New York, 219 F.3d 123 (2d Cir. 2000); Hoffman v. New York, N.H. & H.R. Co., 74 F. 2d. 227 (2d Cir. 1934).  In

13

this case, it does not appear that Montgomery has received a final award and the defendants do not assert that he has. Therefore, as long as the workers compensation award is pending, Montgomery is not barred from bringing a FELA action.

**III. RES JUDICATA**

Once again, the defendants ask this Court to consider their argument that the plaintiffs' FELA claim is barred under the doctrine of res judicata. This argument was first raised in the Defendants' Motion for Reconsideration of this Court's decision on Defendants' earlier Motion for Summary Judgment. The Court refused to entertain a new ground for dismissal in a motion for reconsideration. Defendants now believe that their more recent Motion for Summary Judgment is the appropriate vehicle for this argument.

According to Rule 8(c) of the Federal Rules of Civil Procedure, res judicata is an affirmative defense which must be specifically pleaded in an answer or an amended answer. Fed. R. Civ. P. 8(c). Furthermore, a failure to plead a res judicata defense may constitute a waiver of that defense. Totalplan Corp. Of Am. v. Colborne, 14 F.3d 824, 832 (2d Cir. 1994); Banc One Capital Partners Corp. v. Kneipper, 67 F.3d 1187, 1199 (5th Cir. 1995). In this case, defendants failed to plead res judicata as an affirmative defense to the plaintiffs' FELA claims. Furthermore, in their Reply to Plaintiffs' Opposition Motion to

14

Defendants' Motion for Summary Judgment (Doc. 10), defendants went as far as to expressly disavow res judicata as a defense to the FELA claims. Finally, defendants have never filed a motion to amend their answer pursuant to Fed. R. Civ. P. 15(a). The Court thus finds that defendants waived their res judicata defense.

## IV.  DEFENDANTS' MOTION TO STRIKE

Defendants have moved this Court to strike exhibits 1, 2, 3, 4, 5, 6, 7 and 19 to Plaintiffs' Response to Defendants Motion for Summary Judgment. They further ask the Court to strike Supplemental Exhibits 21, 22, 23, 24 and 25. They argue that these documents relate to the corporate structure of the defendants and are thus irrelevant to the issues raised in their Motion for Summary Judgment. Furthermore, they argue that the Supplemental Exhibits were not timely filed. Finally, they assert that the plaintiffs have failed to heed this Court's instructions to comply with the local rules for discovery.

In support of their argument that irrelevant documents should be stricken, the defendants rely upon Rule 401 of the Federal Rules of Evidence and Rule 56(e) of the Federal Rules of Civil Procedure. However, Rule 401of the Federal Rules of Evidence merely defines "relevant evidence." Fed. R. Evid. 401. Summary Judgment is discussed in Rule 56 of the Federal Rules of Civil Procedure, but Rule 56 does not instruct that irrelevant documents be stricken from the record. Fed. R. Civ. P. 56. The

Court is capable of determining what exhibits are relevant and disregarding those that are not.  It is not necessary to strike irrelevant documents.

The plaintiffs filed their Response to Defendants' Motion for Summary Judgment within the time limits permitted by the local rules.  Following the deadline, the plaintiffs supplemented this motion by adding supplemental exhibits.  The local rules do not prohibit supplemental filings.  Additionally, in their response, the plaintiffs assert that the filing of these supplemental exhibits after the deadline was due to the tactics of delay employed by the defendants.  Thus, the Court denies the Defendants' Motion to Strike.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Revised Motion for Partial Summary Judgment Regarding Statute of Limitations (Doc. 69), Defendants' Motion for Summary Judgment (Doc. 87), Defendants' Motion to Strike (Doc. 105), and Defendants' Motion for Summary Judgment and Motion for Contempt (Doc. 121) are DENIED.

Dated at Burlington, in the District of Vermont, this 24th day of September, 2007.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge
U.S. District Court